[Crim. No. 2678. Fourth Dist., Div. One. Sept. 15, 1967.]

### THE PEOPLE, Plaintiff and Respondent, v. PAUL MURGIA, Defendant and Appellant.

*Assigned by the Chairman of the Judicial Council.

Paul Murgia, in pro. per., and David R. Dotson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce Wm. Dodds, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—Defendant was charged with possession of heroin and two prior federal convictions of narcotics offenses; denied the charge of possession but admitted the prior convictions; was tried by a jury and found guilty; applied for placement and treatment as a narcotics addict as provided by Welfare and Institutions Code, section 3051, which was denied; was sentenced to imprisonment in the state prison; and appeals.

The grounds upon which defendant seeks a reversal are: (1) error in the admission of incriminating statements, contrary to the rule in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361]; (2) error in the admission of a match box containing 24 bindles of heroin and injection paraphernalia allegedly the product of an unlawful search and seizure; (3) error in the manner of submission of instructions to the jury; (4) lack of jurisdiction over defendant; (5) inadequate representation; and (6) error in the denial of defendant's motion to be treated as a narcotics addict.

On June 23, 1966, a federal probation officer assigned to supervise defendant who was on parole following release from imprisonment upon federal convictions of narcotics offenses, contacted him at the home of his mother; was accompanied by a state parole officer; asked and received permission to examine defendant's arms, which is a customary practice with parolees convicted of narcotics offenses; observed a fresh needle mark in the inner fold of the left elbow; and called to the state parole officer, who was sitting in an automobile nearby, to verify his finding. The state officer observed the needle mark and suggested defendant's legs be inspected. The fed-

eral officer agreed; ordered defendant to pull up his pants leg; and as defendant did so noticed a bulge in his sock. Defendant made a movement toward the sock which prompted the command from the federal officer to "Hold it." The state officer removed the cause of the bulge which was a small match box containing 24 white bindles of heroin. Defendant was taken into custody and transported to the local police station. At the trial, over objection, the People introduced in evidence the match box containing the bindles of heroin, and an injection kit seized by the federal officer upon a search, following defendant's arrest, of the home of his mother. Preliminary to introduction of the latter, the federal officer testified he obtained permission of the mother to search the home, telling her the defendant had said there was an injection kit in the bathroom. On cross-examination defense counsel elicited testimony that while the officers were transporting defendant to the police station the latter admitted he had been using heroin twice a day, and had an injection kit which was behind the shower curtain in the bathroom. ■ The evidence supports the conclusion, although the matter is subject to uncertainty, defendant had not been advised before making these statements of his constitutional rights to counsel and to remain silent. No motion was made to strike the testimony relating the statements. However, defense counsel did object to the introduction of the injection kit upon the grounds it was the product of information illegally obtained by the officers in that defendant had not been advised of his constitutional rights before the statements were made.

The contention that admission into evidence of the testimony relating the statements by defendant on the way to the police station was error, is without merit. The testimony was elicited by defense counsel and its admission under these circumstances may not be urged as error on appeal. (*People* v. *Warrick,* 249 Cal.App.2d 1, 3 [57 Cal.Rptr. 121], and cases cited.) Defendant relied upon this testimony as a basis for his objection to the introduction of evidence of the injection kit. No request was made for an instruction that consideration of the allegedly objectionable testimony was limited to this purpose; the court was not required to give such an instruction on its own motion; and no error occurred. Furthermore, the court found the statements in question were volunteered and not the product of a process of interrogation. Under these circumstances, the testimony relating them was not subject to the exclusionary rule announced in *People* v.

*Dorado, supra,* 62 Cal.2d 338. (*People* v. *Powell,* 67 Cal.2d 32, 51 [59 Cal.Rptr. 817, 429 P.2d 137].)

██ The contention the injection kit was the product of an unlawful search and seizure is based on the premise the information from defendant leading to its discovery had been obtained illegally in that he had not been advised of his constitutional rights before divulging the information; and upon the claimed application to this situation of the rule in *People* v. *Bilderbach,* 62 Cal.2d 757, 763, 768 [44 Cal.Rptr. 313, 401 P.2d 921]. Even assuming the information was the product of a process of interrogation and was not volunteered as found by the court, we need not discuss the merits of defendant's contention in the premises because, in any event, the circumstances establish beyond any reasonable doubt he was not prejudiced by admission of the injection kit into evidence. (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].) Defendant was charged with possession of heroin. The elements of this offense, viz., dominion and control over the narcotic with knowledge of its presence and narcotic character, were established by uncontradicted evidence independent of that showing he had a narcotics kit in his possession. The narcotic, 24 white bindles of heroin, was found concealed on his person. He had been convicted of narcotics offenses on two previous occasions. At the time of the search leading to his arrest he had a fresh needle mark on his arm. All this evidence was uncontradicted. Defendant did not testify. The fact the narcotic was on his person established unequivocally it was under his dominion and control. The fact it was concealed in his sock established unequivocally he had knowledge of its presence. The fact of this concealment; the fact the substance in the match box was in bindles, which is the manner in which heroin customarily is packaged; the fact defendant had a recent needle puncture in his arm at the time he was interviewed by his parole officer; and the fact he had been convicted of narcotics offenses on two previous occasions established unequivocally he had knowledge of the narcotic character of the substance in the match box concealed in his sock. Even though the court had sustained the objection to the introduction of the injection kit, he would have been convicted. This conclusion is without any reasonable doubt.

██ The contention the court erred in admitting in evidence the match box containing the 24 bindles of heroin, over objection it was the product of an illegal search and seizure, is based on the fact the search in question was not authorized by

warrant nor an incident to a lawful arrest based on probable cause to believe defendant was engaged in the commission of a crime.

It is the settled rule in California that "the correctional authorities who supervise the parolee on parole may subject him, his home and his effects to such constant or occasional inspection and search as may seem advisable to them" for the purpose of maintaining the restraints and social safeguards accompanying such status; and "that a parole officer needs neither a search warrant nor consent of a parolee in order to search the latter's premises . . . nor is he bound by the requirement of reasonable or probable cause in conducting a search." (*People* v. *Thompson,* 252 Cal.App.2d 76, 85 [60 Cal.Rptr. 203], and cases cited.) For the purpose at hand, there is no material difference between the status of a federal and state parolee. (See *Jenkins* v. *Madigan,* 211 F.2d 904, 906; *Baumhoff* v. *United States,* 200 F.2d 769.) When a parole officer is justified in making a search of a parolee he may solicit the assistance of any other police officers. (*People* v. *Thompson, supra,* 252 Cal.App.2d 76, 85-86.) The contention the search of defendant leading to the discovery of the match box containing heroin was unlawful is without merit.

The contentions (1) the court had no jurisdiction over defendant because he was a federal parolee, (2) the written instructions submitted to the jury did not conform to the oral instructions given them by the court, which is not supported by the record, and (3) the defendant was not adequately represented by counsel at the trial, which likewise is not supported by the record, are frivolous and do not merit any detailed consideration.

 After conviction and before pronouncement of judgment defendant moved the court to proceed in the manner designated by Welfare and Institutions Code, section 3051, which provides for the treatment of a convicted defendant addicted to the use of narcotics. The court disposed of the request with the observation defendant was not eligible for consideration under section 3051 because of the exclusionary provisions of Welfare and Institutions Code, section 3052, as he was subject to a minimum sentence of 15 years. That part of section 3052 to which the court referred provides section 3051 "shall not apply to persons convicted of . . . any offense set forth in Article 1 (commencing with Section 11500) . . . of Chapter 5 of Division 10 of the Health and Safety Code . . . for which the minimum term prescribed by

law is more than five years in state prison." Defendant's conviction of possession of heroin was a violation of Health and Safety Code, section 11500 which provides: "If such a person has been previously convicted two or more times of any felony offense described in this division or has been previously convicted two or more times of any offense under the laws of any other state or of the United States which if committed in this State would have been punishable as a felony offense described in this division, . . . he shall be imprisoned in the state prison from 15 years to life. . . ." The trial court's conclusion defendant was subject to a prison term of 15 years was premised upon the finding the two previous federal convictions were for offenses described in Division 10 of the Health and Safety Code, which is the division of that code dealing with narcotics, and is the "division" referred to in that part of section 11500 fixing the term of imprisonment for persons previously convicted.

The prior convictions charged against defendant were for federal offenses; as alleged in the information, one was "of the crime of Smuggling Narcotics, a felony"; and the other was "of the crime of Importing and Concealing Narcotics."

Defendant contends the conviction of the federal offense of "Smuggling Narcotics" was not a conviction of an offense described in Division 10 of the Health and Safety Code, and for this reason he was not subject to imprisonment for 15 years as prescribed by section 11500. The People contend defendant may not assert the prior conviction for smuggling is not of the class subjecting him to the increased penalty prescribed by section 11500 because he admitted the conviction, citing *People* v. *Niles,* 227 Cal.App.2d 749, 758 [39 Cal. Rptr. 11], in support of this position. The cited case is not authority in the premises. The issue in the case at bench is not, as in the cited case, whether the conviction, which was alleged and admitted to be a felony. in fact was a misdemeanor, but whether the conviction alleged and admitted was of an offense described in Division 10 of the Health and Safety Code. The information in the cited case alleged the felonious nature of the prior offense, which was admitted. The information in the case at bench did not allege smuggling was an offense under Division 10. and defendant's admission of his conviction was not an admission of a fact not alleged.[1]

[1]The decision in *People* v. *Gillette,* 171 Cal.App.2d 497, 505-506 [341 P.2d 398], and the decisions in the cases therein cited, also are directed to situations different from those in the case at bench in that the allegations

The allegation in the case at bench charging the prior conviction of the offense of smuggling narcotics did not set forth what statute defendant violated nor describe the acts constituting the offense. The word "smuggling" within the meaning of the statute punishing a person who "knowingly and wilfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise" (18 U.S.C. § 545), refers to the act of a defendant in surreptitiously and by concealment or fraud, avoiding customs and introducing goods into the United States. (*United States* v. *Claybourn*, 180 F.Supp. 448.)[2] No comparable offense is defined in Division 10 of the Health and Safety Code. Before a prior felony conviction may be considered in determining the extent of punishment prescribed by Health and Safety Code, section 11500, it must be charged as such in the indictment or information and be proven or admitted; if the conviction was under the laws of the United States, the charge must allege an offense which, if committed in this state, would have been punishable as a felony offense described in Division 10 of the Health and Safety Code; where definition of the offense by name differs from that in California, the allegations must establish the minimum elements of the offense are substantially similar to the minimum elements of one of the offenses in Division 10; and any doubt respecting the sufficiency of the allegations to establish the

charging the prior conviction in those cases, when admitted, established the nature of the offense for penalty imposing purposes.

[2]The federal "Narcotic Drugs Import and Export Act" (21 U.S.C. § 185), differentiates between narcotics, as such, and marijuana; specifically defines the term "narcotics" as used therein (21 U.S.C. §§ 171, 185; 26 U.S.C. § 3228—Internal Revenue Code of 1939); contains provisions defining the offense of smuggling marijuana (21 U.S.C. § 176, subd. (a)); but does not contain provisions defining the offense of "smuggling narcotics." However, it would appear the term "merchandise" as used in the statute generally defining the offense of smuggling (18 U.S.C. § 545) includes narcotics. Although the Narcotic Drugs Import and Export Act declares it to be unlawful to import or bring any narcotic drugs into the United States (21 U.S.C. §§ 173, 174), the enforcement provisions of the Tariff Act of 1930 imposing penalties for possession of "merchandise" not described in a manifest specifically refers to merchandise consisting of "heroin, morphine, occaine, isonipecaine, or opiate . . . . smoking opium, opium prepared for smoking, or marihuana." (19 U.S.C. § 1584.) Also of note is the provision of the statute imposing a tax upon narcotic drugs, the definition of which excludes marijuana, produced in or imported into the United States, which declares: "The tax imposed by this subsection shall be in addition to any import duty imposed on narcotic drugs." (26 U.S.C. § 4701.) Thus, it may be concluded the provision of the statute (18 U.S.C. § 545), making it an offense to avoid custom duties was intended to apply to narcotics as well as other merchandise.

requisite character of the offense must be resolved in favor of the defendant. (*People* v. *Morton*, 41 Cal.2d 536, 539 [261 P.2d 523] ; *In re McVickers*, 29 Cal.2d 264, 272, 276, 278 [176 P.2d 40].)

Since there is no offense described in Division 10 which is defined by name as "Smuggling Narcotics," and the information does not allege the substantial elements of that offense as defined by federal law, the admission by defendant of the allegations setting forth the prior conviction in question does not establish he was convicted of an offense punishable as a felony offense described in Division 10. The conclusion of the trial court to the contrary was against law. Defendant's conviction of the offense of possession of heroin and his admission of the prior convictions alleged in the information, one of which only is an offense punishable under Division 10,[3] subjected him to imprisonment "for not less than 5 years nor more than 20 years." Under these circumstances, the finding of the trial court that defendant was ineligible for consideration under Welfare and Institutions Code, section 3051, and its imposition of sentence without exercising the discretion vested in it by that section, was error. (*People* v. *Ortiz*, 61 Cal.2d 249, 252 [37 Cal.Rptr. 891, 391 P.2d 163].) The cause must be remanded to give the trial court an opportunity to exercise the discretion vested in it by section 3051, but not for a new trial on the issue of guilt. (*Idem.*)

That part of the judgment decreeing conviction of defendant is affirmed; that part thereof imposing sentence is reversed; and the cause is remanded for further proceedings in conformity with this opinion.

Brown (Gerald), P. J., and Whelan, J., concurred.

A petition for a rehearing was denied October 4, 1967, and appellant's petition for a hearing by the Supreme Court was denied November 8, 1967.

---

[3]The prior conviction for the offense of "Importing and Concealing Narcotics" is an offense having the same elements as the offense of importing a narcotic described in Health and Safety Code, section 11501. For the elements of the federal offense see 21 United States Code sections 173, 174.